The Court is now in Session. May it please the Court, David Camp for John Higgins. This case turns on the vocational expert questioning surrounding the RFC element and the claimant's need for a bariatric chair, a specially acquired piece of equipment not already present in the workplaces relevant to the identified jobs. The vocational expert, having been asked to consider in the hypothetical question and the RFC that an individual needs a bariatric chair, was also asked whether that is an accommodation as accommodation is defined in the ADA in that an accommodation would be the acquisition of new equipment not normally found in the workplace. That's in the record at 270. Ben stated that this would be... Did the question simply use the ADA's terminology or was the VEA told that it was an ADA question? The VEA was asked to consider nearly identical language to the ADA and given the site to the ADA, but the question was a substantive question. The question was... The VEA was given a site to the ADA and was told it was a site to the ADA? Just the site, 42 USC 12111 was at the end of the question, written in a rocket to the VEA in February by the ALJ. So the ALJ said is a bariatric chair sufficient to support the proper weight and accommodation? In this context, an accommodation would be, and then use the ADA's definition of an accommodation. Was this telephonic testifying? No. No, okay. Counsel if we were to remand this error, how would we have some sense that we just wouldn't get a better question this time that would indicate that the answer that is acceptable, which is an answer that doesn't require that the VEA was just relying on compliance with the ADA, but actually was making a representation about employers in the workplace providing bariatric chairs? Two questions would be appropriate to pose to the vocational expert. Both are meaningful and the answers are not clear from this record. One would be to eliminate the accommodation from the hypothetical to remove the bariatric chair and find out what the vocational expert thinks in that regard. But then second to ask, if there were no presumed ADA compliance and no presumed acquisition of new equipment, are there any identified jobs? Are there those jobs in significant numbers? Wait, say that one again? If the ADA was, if compliance with the ADA was not presumed and the acquisition of a bariatric chair was not presumed. Because the acquisition of a bariatric chair is ADA compliance. The question would be how many employers have a bariatric chair, right? Perhaps. I think that it is... Perhaps, yes or no? Well not exactly because presume, let's say we take normal chairs. If an employer is expanding, they may acquire some chairs. I don't argue that any acquisition of supplies, expansion of an office, building up new cubicles, those aren't ADA compliance issues. But a bariatric chair is the word special. It's the acquisition of equipment not normally found in the workplace. That's the phrasing of the question. So what was the actual question? The question posed was a hypothetical including the need for a bariatric chair defined appropriately. And then a subsequent written question at 270, is that definition of a chair an ADA accommodation? Answer yes. And then another question, well then there was an explanation by the vocational expert. That's at page 274. That is two sentences long. This would be an accommodation wherein the employer would need to acquire the bariatric chair. In my experience this is a common accommodation for an employer to make for an employee. And what's wrong with that? Why is that something that didn't give a basis for the ALJ to conclude that the jobs that were being stated as available for the claimant were not there? Because it's dependent upon, it's entirely dependent upon compliance with the ADA. The answer didn't seem to state that. The answer seemed to be that there are a lot of facilities available. It didn't seem to say that I'm going to assume because the ADA mandates an accommodation that an individual is going to be there. It's just that there seemed to be a knowledge that these kinds of chairs are prevalent. First, I think we have presented sufficient evidence that the chairs are not prevalent. Especially considering that they're not prevalent with Social Security. Wait, wait, wait, wait. What evidence is that? That Social Security acknowledges that not even all of their field offices have bariatric chairs. Forget that. We're talking about the marketplace. What evidence is there that it's not common, that the VE is wrong? Because the VE had, well I'm not asserting that the VE is wrong. Well, that the VE would be wrong as to employers who have so few employees they're not subject to the ADA. The VE's answers are sequential. Nine, ten. Nine, the answer is that there are three identified jobs with cited DOT codes and job incidence data. This is page 274. Then, there are no discrepancies between this response and the DOT or SCO. The DOT and the SCO, of course, include nothing like a discussion of bariatric chairs or several other aspects of the hypothetical question. The DOT is sedentary, exertional category and some other functional capacities. So, no discrepancies between this response and the DOT. And then the next answer, item 10, is a discussion of the need to acquire the chair and that that is commonly done. I don't find that to be evidence, substantial evidence, that the vocational expert was testifying that there are 410,750 sedentary table workers. Why don't you say there was evidence to the contrary? That's what I was asking about. The evidence to the contrary is that it's the vocational expert's opinion that the chair needs to be acquired, that the chair is not already in at any frequency identified. And it was their opinion that it was a common accommodation, that this was something that employers commonly would provide for employees. Yes, I think the word common is interesting there in that I believe it applies to when the ADA covers the situation, compliance with the ADA is common. Or that that is amongst ADA accommodations, one of the more common. Well, the VE wasn't asked to clarify the common one. Correct. And this is the burden of the Commissioner. This is at step 5. This was all raised on the claimant's questioning of the VE. The ALJ's questioning. I raised the topic, I obtained a treating physician opinion, I questioned about it, we presented evidence about it, we carried our burden through to establishing the RFC. But if the ALJ didn't follow up because the ALJ thought he or she knew what the VE meant, that could have been pursued by further questioning. Well, I think it's established what the VE meant. The VE meant that the chair had to be acquired. The VE meant that the chair had to be acquired because of the ADA. But I just, you know, there are a lot of employees, a lot of employers who aren't subject to the ADA. Sure. Was it 20, 20 employees, something like that. Something like that. And the kind of jobs we're talking about here might well be small employer jobs. It's not in the record and I do not know. Oh, I'm sorry. But the VE was testifying across the economy. Across the economy, generally, many jobs include employers that are ADA compliant and compelled to be ADA compliant, and some that are voluntarily. Well, you think the Supreme Court was assuming that when it... And I haven't studied Cleveland. They were assuming that no one would comply with the ADA unless they had to. Well, we needed the ADA. I mean, the ADA needed to be a bill. Because it wasn't already voluntarily being done. It's a different context. But nonetheless, the question pursuant to Cleveland is, is this a finding that jobs are available considering the ADA? And it is. It's explicitly dependent upon an ADA compliant step taken by employers. The acquisition of the equipment. If there are no further questions. Thank you, Mr. Camp. Ms. Thornton-Miller? I'm going to plead the court. I'm Angela Thornton-Miller, and I represent the Social... You're going to have to speak up. Sorry. And I represent... Pull that mic toward you just a little bit more. Social Security Administration. Yes, the agency asks that the court affirm the ALJ's finding that plaintiff was not disabled because the vocational experts' responses did provide substantial evidence supporting the finding that plaintiff could perform a significant number of jobs and did not impermissibly rely on individual employers' obligations to provide accommodation under the ADA. But when... And I assume that's probably where the difficulty comes in this case is the use of the term accommodation when the vocational expert says it's not uncommon, it's a not uncommon accommodation that seems to bring in to play the operation of the ADA and seems perhaps a source of some confusion here. Why wouldn't it be appropriate to have this go back and just get it clarified as to what the V.E. meant? Well, the vocational experts' responses, when taken as a whole show that she was talking about broad vocational patterns and not specifically relying on the ADA, the way the question... hypothetical that included plaintiff's limitations, including the bariatric chair, and she identified a significant number of jobs that plaintiff could perform, including the need for the bariatric chair. And then in response to the follow-up question, which never used the words ADA in the question, just included the legal citation, she said, yes, this is an accommodation that's a common accommodation. She didn't use terms like reasonable accommodation, and she did not ever use ADA or cite to that statute or those requirements. I was struck by the fact, maybe this happens more frequently than I think there were two sets of additional interrogatory sent, weren't there? Yes, following the administrative hearing, the ALJ sent... Well, it's set forth in your brief. Maybe that... Well, I guess whether it happens frequently or not is beside the point. I just haven't seen too many cases like that, which is totally beside the point. Because your argument is, in answer to the second sect, according to your argument, it is that the DE provided evidence that the ALJ could rely upon? Is that your position? Correct, yes. And the ALJ was trying to fully and fairly develop the record in sending along those additional questions and taking in... Following the hearing in the first set of interrogatories, plaintiff obtained the prescription for the bariatric chair. And your opponent's argument is that the ALJ impermissibly resumed compliance with ADA? Is that the argument that your opponent is making? That the ALJ and the VE... Impermissibly assumed that? Right, that's their argument. Right. First thing, they're separate statutes, and there's no evidence that the vocational expert was considering the ADA in her answers or... And, of course, their request for relief, as I understand it, is send it back for further development of the record. Right. And what would be wrong with that? Well, it's unnecessary... Well, I guess that's a good answer. I mean, that's your position. Right. Um... And this is an unusual case in terms of a Social Security disability case, and few circuits have reached the issue. The two cases that probably are most instructive are the Jones case from the Fifth Circuit, which the district court found, and we agree, is the more... The situation that's more like this case, where the vocational expert sort of mentioned the ADA in passing in response to a follow-up question. And in that case, the court indicated that when taken as a whole, you have to look at the entirety of the vocational expert's testimony. She wasn't relying just on the ADA. She's saying, in that case, it was a sit-stand option, is widely available in the workplace. And just because there's an accommodation like a sit-stand option does not mean there's not a significant number of jobs available with that accommodation. Similarly with bariatric chairs, just because it might be termed an accommodation or a modification of the workplace doesn't mean they're not significantly available as the vocational expert's responses indicate. This court has considered the issue in the EBAC case, but those facts are very different from this case. In that case, if you read the decision, the vocational expert testimony that's quoted is repeatedly referring to the ADA, and actually specifically said that his testimony would be different if he wasn't considering the ADA. And that is nothing like what we have in this case, where the vocational expert did not mention the ADA, did not use the words reasonable accommodation, and first answered the question, the hypothetical question, that there are a significant number of jobs available where a bariatric chair would be available for a plaintiff to use. In conclusion, the agency asks that you would affirm the ALJ's decision, the vocational expert's responses were regarding broad vocational patterns. This case is very similar to the Jones case, and she did not impermissibly rely on the obligations under the ADA in citing those jobs that are available. And because plaintiff could perform a significant number of jobs, he's not disabled under the statute. There's no questions. Thank you. Thank you, Ms. Thornton-Miller. I believe you used up all of your time initially. Did you hear something from the government that you think, in fairness, the court needs to be advised of? The government argued that the cases are different in that there was no quoting of the ADA or citation to the ADA, but the V.E. did say ADA and EBAC, whereas here the V.E. was asked to consider 42 U.S.C. 12111, which is the ADA, and the definition of accommodation from the ADA. I find no significant difference there. Thank you. Thank you, counsel. The court will take your case under submission. We appreciate your presence here today, the arguments you've provided to the court, and we'll do the best we can.